In the Matter of CURNEL NATHANIEL HICKERSON.

(Filed 11 June, 1952.)

1. **Statutes § 5a—**

   All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable intendment.

2. **Same—**

   Where a literal interpretation of a statute will lead to absurd results or contravene the manifest purpose of the Legislature, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.

3. **Same—**

   If the meaning of a statute be in doubt, reference may be had to its title and context as legislative interpretations of the purpose of the act.

4. **Statutes § 13—**

   An action captioned a public-local or private act does not repeal a public law unless it makes specific reference to such public law, nor will it be held to repeal such public law in its entirety even though the public law be specifically referred to therein when the public-local or private act expressly limits its purpose of repeal to a single county. G.S. 12-1.

**5. Courts § 8—**

Chap. 896, Session Laws of 1949, *held* to repeal G.S. 7-285 only in regard to Surry County, and therefore Wilkes County is still excluded from the provisions of the general county court act and the Wilkes County Board of Commissioners is without authority to establish a general county court in said county.

**6. Public Officers § 9: Habeas Corpus § 2—**

Where the county commissioners of a county are without authority to establish a general county court, the person named in their resolution to be judge of such court is without any actual or apparent authority to so act, and therefore a person sentenced by him may attack the validity of his imprisonment at any time in any proceeding.

RETURN to writ of *certiorari* allowed on petition of the State of North Carolina and Board of County Commissioners of Wilkes County, to bring up for review judgment of *Phillips, J.*, entered on writ of *habeas corpus* in behalf of Curnel Nathaniel Hickerson, a prisoner in N. C. Prison Camp No. 809.

The record on this appeal reveals these facts:

1. The County Board of Commissioners of Wilkes County, in regular meeting in February, 1952, purporting to act under and by virtue of and in compliance with provisions of Article 30 of Chapter 7 of General Statutes of North Carolina, G.S. 7-265, to and including G.S. 7-284, passed a resolution for the establishment of a general county court, appointing therein T. E. Story, as judge of such court, and F. J. McDuffie, as prosecutor, with direction that the "court . . . shall commence its operation at the earliest possible date provided by statute," etc.

2. Thereafter, on 14 February, 1952, T. E. Story subscribed and took oaths prescribed for a judge of such court.

3. And on 25 February, 1952, and upon affidavit charging that "at and in said county of Wilkes . . . on or about 24 day of February, 1952, Curnel Nathaniel Hickerson did unlawful, wilfully and feloniously operate a motor vehicle on the public highways of North Carolina while under the influence of some alcoholic beverage or other narcotic drug . . .," etc., a warrant for the arrest of Curnel Nathaniel Hickerson, signed by "T. E. Story, Judge General County Court" and directed to "any lawful officer of Wilkes County" was issued, and served, and to which on same day "in the General County Court" defendant pleaded guilty. Thereupon "T. E. Story, Judge, General County Court," ordered that "defendant be confined in the common jail of Wilkes County for the term of thirty (30) days to be assigned to work on public roads under the supervision of the State Highway and Public Works Commission," etc., and then be discharged according to law,—"said sentence to commence February 25, 1952."

Thereafter, Curnel Nathaniel Hickerson, upon petition sworn to and subscribed by him, 6 March, 1952, petitioned Phillips, J., one of the Superior Court judges of the State of North Carolina, for a writ of *habeas corpus,* and for cause, in substance, showed: (1) That he, the petitioner, is imprisoned and restrained of his liberty in a prison camp of the State of North Carolina, No. 809, located in Wilkes County, North Carolina,—"the cause of pretense of said imprisonment or restraint . . . is a commitment issued pursuant to a conviction of this petitioner" as above set forth. (2) That his imprisonment and restraint is illegal for that the said T. E. Story was vested with no power or authority to act in the capacity of judicial officer, and to try and convict this petitioner, and by reason thereof his conviction is void, in that:

(a) The General County Court of Wilkes County was established in violation of G.S. 7-285;

(b) Chapter 896, Sec. 1, of the 1949 Session Laws of North Carolina applies only to Surry County and, being a public-local law, is unconstitutional, particularly as applied to Wilkes County; and

(c) The General County Court of Wilkes County was established in violation of the statutes and Constitution of North Carolina and is unconstitutional and void.

A writ of *habeas corpus,* directed to the superintendent of said prison camp No. 809, was issued and served on 6 March, 1952, returnable before Phillips, J. And upon the return thereof, and after hearing at March Term, 1952, Phillips, J., under date of 7 March, 1952, entered judgment in which, after reciting that "it appearing that the petitioner is now in custody, and the court finding as a fact that the said Curnel Nathaniel Hickerson was tried in a General County Court of Wilkes County, and that his time for appealing had expired prior to hearing of the writ," and that "court is of opinion and holds that the General County Court for Wilkes County, established by resolution of the County Commissioners, is void and without power or authority to operate . . . that the resolution establishing said court is void and illegal, and that the County Commissioners were without authority to adopt said resolution under the law of North Carolina," it was ordered, adjudged and decreed that the prisoner Curnel Nathaniel Hickerson be released and discharged from further custody.

Thereafter, the State of North Carolina and Board of County Commissioners of Wilkes County petitioned the Supreme Court of North Carolina for writ of *certiorari* to bring up for review the record of the proceedings on the writ of *habeas corpus* as above set forth. The petition was allowed, and the record of the proceeding is now before the Supreme Court for review on error assigned.

*Hayes & Hayes for County of Wilkes.*

*Harry McMullan, Attorney-General, of counsel for petitioner.*

*W. H. McElwee, Larry S. Moore, Max Ferree, Robert M. Gambill, W. G. Mitchell, Eugene Trivette, and J. H. Whicker, Jr., for defendant, appellee.*

WINBORNE, J. Decision on this appeal rests upon the determination of this question: Was the statute G.S. 7-285 repealed by the provisions of Chapter 896 of the 1949 Session Laws of North Carolina?

If this statute was so repealed, Wilkes County was thereby brought within the purview of the public statutes, Article 30 of Chapter 7 of General Statutes, G.S. 7-265, G.S. 7-266, *et seq.,* authorizing, and making provision for, the establishment of general county courts, and in such event the board of commissioners for the county of Wilkes would have been authorized to establish a general county court in Wilkes County.

But, on the other hand, if it was not so repealed, Wilkes County, as one of the counties comprising the Seventeenth Judicial District, was expressly excepted from the provisions of the above statutes, Article 30 of Chapter 7 of General Statutes, and, in such event, the board of commissioners for the county of Wilkes would have had no authority to establish a general county court under the provisions of these statutes.

The decision of the court below is based upon the latter view,—that G.S. 7-285 was not repealed by the provisions of Chapter 896 of the 1949 Session Laws of North Carolina. And in the light of applicable principles of law we are of opinion and hold that the decision is correct.

In this connection it is appropriate to note that the statute providing for the establishment of general county courts was enacted by the General Assembly of 1923, Public Laws 1923, Chapter 216, of which a part is now G.S. 7-265. This enactment was amended by Chapter 85 of the Public Laws of 1924, Extra Session, in various details and by adding, among others, these sections: "Sec. 24a," now G.S. 7-266, authorizing the establishment of such court without holding an election on the question; "Sec. 24e," now G.S. 7-270, relating to the taxing of costs in both civil and criminal actions; and "Sec. 24f," now in the main G.S. 7-285, which reads: "This act shall not apply to any county in which there has been established a court, inferior to the Superior Court by whatever name called, by a special act, nor shall this act apply to the following counties: Granville, Iredell, New Hanover, Pasquotank, and Wake, nor shall it apply to the counties in the Sixteenth (16th), Seventeenth (17th), and Nineteenth (19th) Judicial Districts." Later other counties were added to those to which the act did not apply, and still others were placed under the provisions of the act. None of either class is here involved.

And, taking note of public-local statutes, it appears that Surry County was a county in which there had been established a court, inferior to the Superior Court, to wit: Recorder's Court of Mt. Airy Township, by a special act P.L. 1913, Chapter 692. Notice is also taken of the fact that Surry County was in the Eleventh Judicial District of North Carolina in the years 1923 and 1924, and until 23 March, 1937, when it became, and is now, a part of the newly created Twenty-first Judicial District. See Article 6 of Chapter 27 of Consolidated Statutes of 1919, P.L. 1937, Chapter 413, and Article 9 of Chapter 7 of General Statutes.

Too, notice is taken of the fact that Wilkes County was in the years 1923 and 1924, and still is, in the Seventeenth Judicial District. See Article 6 of Chapter 27 of Consolidated Statutes of 1919, and Article 9 of Chapter 7 of General Statutes.

Thus it appears that both Surry County and Wilkes County were excluded from the general county court act.

Such was the situation of each of these counties with respect thereto when House Bill 1073 was passed by the General Assembly, and became Chapter 896 of the 1949 Session Laws of North Carolina.

This act is entitled "An Act repealing Section 7-285 of the General Statutes relating to the establishment of General County Courts and amending certain other sections of Article 30, of Chapter 7 as they relate to the Surry County General Court."

Section 1 of the act reads: "Section 7-285 of the General Statutes is hereby repealed."

Section 2 provides for specific amendments of Article 30 of Chapter 7 of the General Statutes, particularly G.S. 7-270 and G.S. 7-271, in so far as it, the Article, relates to any general county court which has been, or which may be established in Surry County, and adds to G.S. 7-274 authority to justices of the peace of Surry County to issue warrants and make same returnable before the judge of the general county court.

Sections 3 and 4 provide for the county commissioners of Surry County to draw a jury, for a jury tax and other costs, and for appeals to Superior Court, setting forth procedural matters in connection therewith, and fixing time within which a defendant tried and convicted in the general county court for Surry County may appeal to Superior Court.

Then there follows:

"Sec. 5. That if any part of this act shall be held unconstitutional, such unconstitutionality shall not affect the remainder of this act.

"Sec. 6. That all laws and clauses of laws in conflict with the provisions of this act are hereby repealed."

The question then arises as to what was the intention of the Legislature in passing this act.

In this connection, in *S. v. Barksdale,* 181 N.C. 621, 107 S.E. 505, this Court, in opinion by *Hoke, J.,* stated that parts of the same statute, and dealing with the same subject, are "to be considered and interpreted as a whole, and in such case it is the accepted principle of statutory construction that every part of the law shall be given effect if this can be done by any fair and reasonable intendment, and it is further and fully established that where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded," citing *S. v. Earnhardt,* 170 N.C. 725, 86 S.E. 960; *Abernethy v. Comrs.,* 169 N.C. 631, 86 S.E. 577; *Fortune v. Comrs.,* 140 N.C. 322, 52 S.E. 950; *Keith v. Lockhart,* 171 N.C. 451, 88 S.E. 640; Black on Interpretation of Laws (2d), pp. 23-66.

Moreover, if the meaning of a statute be in doubt, reference may be had to the title and context as legislative declarations of the purpose of the act. *S. v. Woolard,* 119 N.C. 779, 25 S.E. 719; *Machinery Co. v. Sellers,* 197 N.C. 30, 147 S.E. 674; *Dyer v. Dyer,* 212 N.C. 620, 194 S.E. 278; *S. v. Keller,* 214 N.C. 447, 199 S.E. 620.

In the *Woolard case, supra, Clark, J.,* said: ". . . the title is part of the bill when introduced, being placed there by the author, and probably attracts more attention than the other parts of the proposed law, and if it passes into law the title thereof is subsequently a legislative declaration of the tenor and object of the act . . . Consequently when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered."

And in *Abernethy v. Comrs., supra, Walker, J.,* writing for the Court, declared that "We may call to our aid other laws or statutes relating to the particular subject, or to the one under construction, so that we may know what the mischief was which the Legislature intended to remove or to remedy."

In the light of these principles, applied to the case in hand, it seems clear that the object and purpose of the Legislature was to take Surry County out of those counties to which the general County court act did not apply, and place it under the provisions of the act, and to make special provisions as shown above in respect of the general county court of Surry County. And, hence, the provision for the repeal of G.S. 7-285 must be taken to mean that it be repealed only in so far as it relates to Surry County. In fact, reference to the original bill and to the House Journal discloses that the bill was introduced by the Representative from Surry County. And the original bill shows that while at first it was stamped "Public Bill," the word "Local" hand-printed in red pencil, was inserted between the word "Public" and the word "Bill," so as to read

"PUBLIC LOCAL BILL." This may be considered as indicative of the character of the act,—and as bearing upon the intention of the Legislature. We, therefore, hold that the bill was local in purpose.

And it may be noted that the statute, G.S. 12-1, pertaining to statutory construction, declares that "No act, which by its caption purports to be a public-local or private act, shall have the force and effect to repeal, alter or change the provisions of any Public Law, unless the caption of said public local or private act shall make specific reference to the Public Law it attempts to repeal, alter or change." In this respect, while the caption of the act Chapter 896 of 1949 Session Laws contains specific reference to the public statute, G.S. 7-285, the purpose of repeal of it is expressly limited by the clause "as they relate to the Surry County General Court."

Hence we hold that Wilkes County is still excluded from the provisions of the general county court act; that the board of commissioners for Wilkes County was without authority to establish a general county court in said county; that the resolution of the said board of commissioners, attempting to do so, is void; and that the person named in the resolution to be judge of such general county court, who undertook to act officially in the criminal prosecution of Curnel Nathaniel Hickerson, did so without any actual or apparent authority. Thus, as stated in the case of *In re Wingler,* 231 N.C. 560, 58 S.E. 2d 372, opinion by *Ervin, J.,* "Since he is not an officer at all or for any purpose, his acts are absolutely void, and can be impeached at any time in any proceeding." See cases there cited.

Therefore, the judgment of the court below is

Affirmed.