IN THE MATTER OF THE APPEAL OF: NORTH CAROLINA FORESTRY
FOUNDATION, INC., FROM THE ASSESSMENT OF ITS PROPERTY
    KNOWN AS THE "HOFMANN FOREST" FOR AD VALOREM TAXATION
    BY ONSLOW COUNTY FOR 1974 AND 1975

No. 7710SC191

(Filed 7 March 1978)

1. **Taxation § 25— ad valorem taxes—timberland—payments in lieu of taxes
   —listing of property by county—discovered property—exempt property**

   Timberland upon which a foundation made payments in lieu of taxes for
   the years 1969-1973 pursuant to former G.S. 105-279(b) was properly "listed"
   by the county in the name of the foundation for the years 1970-1974 either as
   discovered taxable property pursuant to G.S. 105-312 or as exempt property
   pursuant to G.S. 105-282.

2. **Taxation § 25— ad valorem taxes—discovered property—necessity for notice
   and hearing**

   Discovered property is "listed in the name of the taxpayer who listed it
   for the preceding year" within the meaning of G.S. 105-312(c), and notice to the
   taxpayer and an opportunity for a hearing are not required by the statute,
   when the property was listed personally by the taxpayer or was listed in the
   taxpayer's name by "any other person," according to law, for the preceding
   year. Therefore, the listing of a foundation's timberland for the previous year
   by the tax supervisor removed any requirement of notice of discovery or the
   granting of a hearing to the foundation concerning its taxes for the present
   year.

3. **Taxation § 19— ad valorem taxes—application for exemption—failure of county
   to respond—no presumption of acceptance**

   A county's failure to respond to an application for exemption of property
   from ad valorem taxation did not establish a presumption, rebuttable or other-
   wise, that the application for exemption had been granted.

4. **Taxation § 19— ad valorem taxes—application for exemption—absence of hear-
   ing at county level**

   A foundation was not denied any substantial right by the lack of a hearing
   at the county level on its application for exemption of property from ad
   valorem taxation where the lack of a hearing was due partly to its own inat-
   tentiveness, and where the foundation received a full hearing before the Tax
   Commission and a review of the Tax Commission's decision in the superior
   court.

5. **Taxation § 25— ad valorem taxes—waiver of defenses by county**

   A county waived any affirmative defenses it may have had in a pro-
   ceeding to review an assessment for ad valorem taxes by its failure to raise
   such defenses before the Property Tax Commission. Furthermore, equity did
   not require either the superior court or the Court of Appeals to take
   cognizance of the county's belated attempts to assert such defenses where the

appeal to the Property Tax Commission, superior court, and the Court of Appeals has been limited to a review of assignments of errors of law arising from uncontested facts.

6. **Taxation § 22— ad valorem taxes—nonprofit corporation—educational, scientific, charitable purposes—exclusive use—lease of timberland to business**

Forest land owned by a nonprofit corporation was not "used exclusively" for educational and scientific purposes within the meaning of G.S. 105-275(12), for educational purposes within the meaning of G.S. 105-278.4, or for charitable purposes within the meaning of G.S. 105-278.6(7), and thus was not exempted from ad valorem taxation by those statutes, where the nonprofit corporation generated income by leasing the property to a commercial packaging company which used the forest as a source of timber and pulpwood for its business, notwithstanding the nonprofit corporation may have used the income for educational and scientific purposes and may have used the forest incidentally for education and scientific research, since it is the actual use of the property by the lessee that determines whether the property is "used exclusively" for an exempted purpose.

7. **Taxation § 22— ad valorem taxes—nonprofit corporation—protected natural area**

Forest land owned by a nonprofit corporation which was leased to a commercial packaging company for use as a source of timber and pulpwood was not exempted from taxation under G.S. 105-275(12) as realty held for educational and scientific purposes "as a protected natural area," although the corporation has improved the forest as a habitat for deer and quail by extensive road building, draining and cutting, since the term "protected natural area" means property which, insofar as possible, is kept in a pristine state free from those interferences which any given generation may feel to be "improvements" on nature.

8. **Taxation § 21— ad valorem taxes—forest land—ownership not in State**

The "Hofmann Forest" is not owned by North Carolina State University and exempt from taxation as State property under G.S. 116-16, but is owned by the North Carolina Forestry Foundation, Inc., a nonprofit corporation, since the evidence shows that although the University is to receive the Foundation's assets upon dissolution, it has neither legal nor beneficial ownership of the Forest; the University is merely represented on the Foundation's board of directors; and the Foundation's board of directors is not controlled by the University but has the power to act without regard to the wishes of the University.

APPEAL by petitioner from *Herring, Judge.* Judgment entered 3 November 1976, in Superior Court, WAKE County. Heard in the Court of Appeals 12 January 1978.

This is a civil action in which the North Carolina Property Tax Commission (hereinafter "Tax Commission") found certain property of the petitioner subject to ad valorem taxation in

Onslow County. The Superior Court heard the matter on the petitioner's petition for review of the final administrative action of the Tax Commission and, from the judgment of the Superior Court affirming the ruling of the Tax Commission, the petitioner appealed to this Court.

Petitioner, the North Carolina Forestry Foundation, Inc. (hereinafter "Foundation"), was incorporated in 1929 and, in 1934, purchased lands known as the "Hofmann Forest," which was comprised of approximately 81,000 acres of timberland in Jones and Onslow Counties. Approximately 50,000 acres of the "Hofmann Forest" (hereinafter "Forest") is located in Onslow County and, with the exception of a small percentage which has been completely cleared, is the subject of this action. The Foundation, a nonprofit organization, was incorporated for the expressed purpose of promoting the science of forestry by holding tracts for educational and scientific purposes. The parties stipulate that, in 1934, the Attorney General expressed his opinion that the Forest should be exempt from ad valorem taxes because of the public nature of the Foundation and the purpose for which the lands were held. In 1945, the Foundation signed a ninety-nine year lease with the Halifax Paper Company, Inc., which included the following:

[I]n order to properly prosecute the objects for which the Foundation was organized, it is necessary and desirable that an outlet be found having the disposition by sale of merchantable timber, pulpwood and wood-products, equal to the annual growth of all merchantable timber, trees, and wood growing upon the real property.

The lease further indicated the Foundation was in need of income for debt payment and equipment. Hoerner-Waldorf Corporation (hereinafter "Corporation"), a packaging manufacturer, is successor to the interest of the Halifax Paper Company, Inc., and now holds the lease which affords it the right to cut timber and pulpwood. Additionally, it holds all hunting rights. The Corporation in return pays substantially below market value for the timber, constructs roads, maintains drainage ditches and fire lanes across the Forest and permits entry by students and scientists from time to time for the study of forestry science.

The Foundation's evidence tended to show that three of its directors are professors of forestry at North Carolina State University. Upon dissolution of the Foundation, all of its assets, if

any, are to be distributed to the School of Forestry Resources of North Carolina State University. The revenues received from the Corporation are the Foundation's major source of revenue, and the funds pay the salaries of the Foundation's employees working in the Forest, one of whom visits the Forest twice a week. The Foundation donates funds to North Carolina State University, but is not required to do so.

The Foundation contends the Corporation is nothing more than its agent, and as such, is permitted to purchase lumber and pulpwood at reduced rates. In 1974 the Corporation cut 10,700 cords of pulpwood and 275,000 cords of saw timber from the Forest and maintained from 25 to 100 workers there. The Corporation is not required to reseed or replant after cutting the various types of timber but usually does so, after consulting with the Foundation supervisor.

The Corporation permits students and scientists to use the Forest, for study "provided, however, that such study groups or students will do nothing whatsoever to interfere with any program undertaken or in progress by [Corporation] in or on Hofmann Forest. In 1974 two groups used the Forest for educational purposes; the State Department of Natural and Economic Resources for 100 days, and North Carolina State University for 12 days.

The Corporation's manager testified that it conducted public tours, that this practice is fairly common among private timber companies and that the research gleaned from the Forest benefited it commercially. He additionally testified that the Forest was the Corporation's main source of timber and pulpwood and, on recross-examination, stated that:

> The primary interest of Hoerner-Waldorf Corporation in its operation of the Hofmann Forest *is to have a source of pulpwood and timber for its operations*, although, as I mentioned before, when we assumed responsibility for harvesting and development work, we recognized that we were taking on other responsibilities in regard to the forest. [Emphasis added.]

It was stipulated that, in 1969 the Attorney General expressed his opinion that the Forest was no longer exempt from ad

valorem taxation. The Foundation at that time chose the option available under G.S. 105-279(b), of paying ten cents (10¢) per acre in lieu of the standard tax on similar real property. This option was not available to the Foundation during 1974 or 1975 due to passage by the General Assembly of Chapter 668 of the Session Laws of 1973 which by amendment to the statute deleted the option effective 1 July 1973.

The Foundation received a notice from Onslow County on 15 July 1974 of its ad valorem tax liability of $25,466.40 for 1974. The Onslow County Board of Equalization and Review had adjourned on 6 May 1974.

By letter dated 11 November 1974, the Foundation objected to the Forest being subjected to ad valorem taxation and sought to present its arguments relative to claimed exemptions to the Onslow County Board of Commissioners. In a letter dated 13 January 1975 from the Onslow County Manager, the Foundation was notified that the Onslow County Board of Commissioners had rejected the letter of 11 November 1974, but would be willing to meet with the Foundation to consider any presentation it wished.

By letter dated 29 January 1975, the Foundation notified the county manager that it would file a formal application for exemption of the Forest for the year 1975 and requested any meeting with the commissioners concerning the 1974 tax liability be deferred until action had been taken with respect to the 1975 application for exemption. On 30 January 1975, the Foundation transmitted an application for exemption of the Forest to the office of the Onslow County Tax Supervisor by certified mail. The application for exemption was received and signed for by an employee of the county but apparently never reached the tax supervisor personally.

On 1 August 1975 a tax notice was mailed to the Foundation by Onslow County showing a total 1975 ad valorem tax liability of $23,558.98 for the Forest property. The Foundation received no acknowledgment of or information concerning its application for exemption.

The Foundation applied for a hearing before the Tax Commission. The Tax Commission, sitting as the State Board of Equalization and Review, on 4 December 1975 conducted a full *de*

*novo* hearing into the assessment of the Forest for 1974 and 1975 ad valorem taxation by Onslow County. On 26 April 1976 the Tax Commission rendered a written decision and order determining the property was not exempt from ad valorem taxation for 1974 and 1975 and affirming the assessments by Onslow County for those years.

On 27 May 1976 the Foundation petitioned the Superior Court for review of the final administrative decision of the Tax Commission. On 3 November 1976, the Superior Court entered a judgment and order affirming the final decision of the Tax Commission in all respects. From that judgment and order of the Superior Court, the Foundation took this appeal.

*Poyner, Geraghty, Hartsfield & Townsend, by Thomas L. Norris, Jr. and Curtis A. Twiddy, for petitioner appellant, North Carolina Forestry Foundation, Inc.*

*James R. Strickland and Joyner & Howison, by R.   C. Howison, Jr. and J. E. Tucker, for Onslow County, respondent-appellant-appellee.*

MITCHELL, Judge.

[1]  Appellant Foundation first contends that the Superior Court erred in affirming the Tax Commission's decision that Onslow County did not fail properly to discover the Foundation's property prior to adjournment of the Onslow County Board of Equalization and Review during 1974. This contention is without merit.

From 1969 through 1973, the Foundation did not pay ad valorem taxes on its timberland in Onslow County. Instead, it made payments, in lieu of taxes, of ten cents (10¢) per acre per year on this property pursuant to the terms of then G.S. 105-279(b). During those years, the Foundation did not contend that the property in question was of a type classified as "excluded from the tax base" by G.S. 105-275 which set forth all of the forms of property classified as "excluded" property. Additionally, the Foundation did not contend during those years that its timberland in Onslow County was exempt from taxation under the terms of G.S. 105-278 which set forth a listing of classes of property exempt from taxation and purported on its face to be an exclusive listing of such property. Rather, the Foundation made

its payments of ten cents (10¢) per acre per year in lieu of paying the county taxes "otherwise assessed against such timberland" pursuant to G.S. 105-279(b), which did not by its terms purport to grant either an "exclusion" or an "exemption" from ad valorem taxation.

If the timberland in question was neither exempt nor excluded property, but instead ordinary taxable real property merely subject to a statute permitting an alternate method of payment, the amendment of G.S. 105-279 in no way altered the Foundation's underlying tax liability on the property or its duty to list the property for ad valorem taxes each year. Under this view, had the Foundation failed to list the property in years prior to 1973, the county would have been obliged to discover the property pursuant to G.S. 105-312.

If, however, the Foundation's Forest property were viewed as being "exempt" by virtue of G.S. 105-279(b), it would have been, nonetheless, subject to listing. Until its repeal, effective 1 January 1974, G.S. 105-282 commanded the county to enter in its tax records the name of the owner together with a clear description and statement of value of all property exempt from taxation.

If property upon which payments in lieu of taxes pursuant to G.S. 105-279(b) be considered exempt property, then, nothing else appearing, we must presume the tax supervisor, a public official, acted pursuant to law and listed the Foundation's property pursuant to G.S. 105-282. 10 Strong, N.C. Index 3d, Public Officers, § 8.1, pp. 472-73. Although this presumption may not be used, standing alone, as proving an independent material fact, it is supported in the present case by the sworn testimony before the Tax Commission of James Justice, tax supervisor for Onslow County. He testified that in Onslow County, by statute, real estate is automatically listed for ad valorem taxes. He further testified that prior to 1974, the Foundation was making payments of ten cents (10¢) per acre in lieu of ad valorem taxes on the Forest land. Beginning in 1974 he listed the Foundation's Forest property for taxes in the same manner as adjoining forest land.

Additionally, the presumption that the Forest was listed pursuant to G.S. 105-282, if the property was exempt, is supported by the documentary exhibits filed with this Court together with the record in this case. Respondent's Exhibit Number 10 de-

scribed as "Onslow County Tax Collector's Collection Record" properly sets forth the name and address of the Foundation together with an indication that the property listed thereon apparently lies within White Oak Township and that the acreage is that of the Forest property in question. The exhibit appears to be a tax record for the years 1970 through 1975 inclusive. For each year during 1970 through 1973 inclusive, the exhibit reflects under the column "total tax" an amount equal to ten cents (10¢) multiplied by the Foundation's acreage. In each of those years, the exhibit reflects that amount was paid. For the years 1974 and 1975, the exhibit reflects payment of the ordinary ad valorem tax at the assessed value of the property.

If the Foundation's property was not exempt property prior to 1974, and G.S. 105-279(b) merely provided for special or alternate payment, the same exhibits and the testimony of the tax supervisor would support the presumption that the county had discovered the property, then carried it forward in the Foundation's name in each year prior to 1974 in accordance with the terms of G.S. 105-312 and G.S. 105-303(b). Therefore, whether the Forest property in Onslow County is viewed as having been "exempt" property during the year 1973 and preceding years or as taxable property upon which the owner was permitted to make a special or alternate payment in lieu of taxes, we conclude that the property was "listed" in the name of the Foundation and described with particularity from at least 1970 through 1975 inclusive.

As G.S. 105-279 was rewritten effective 1 July 1973, the Foundation had notice that it was required to list its Forest property in Onslow County for 1974 just as any other taxpayer. The Foundation is presumed to know the law and to know, therefore, that its Forest property is not now and has never been excluded from the tax base. *Pinkham v. Mercer*, 227 N.C. 72, 40 S.E. 2d 690 (1946). The Foundation was, therefore, presumed to know of any amendment to G.S. 105-279 and that the amendments which rewrote that statute did not remove its duty to list its property and to pay the standard tax rate on its property for 1974.

The Foundation apparently recognized that, effective with the 1974 tax period, it no longer had the option of payments in lieu of taxes, and that, pursuant to G.S. 105-282.1, every owner of property claiming an exemption or exclusion must file its applica-

tion for such not later than 31 May 1974. On 11 November 1974, the Foundation wrote the Onslow County Board of Commissioners to apply for exemption of its Forest property. In that letter, signed by Rudolph Pate, Secretary of the Foundation, it was expressly recognized that: "Because the Foundation failed to make application for exempt status prior to May 31, 1974, its claim of exemption is based on its right to appeal provided by North Carolina General Statutes, Section 105-282.1(c). . . ." By this communication, the Foundation specifically recognized that its application for exemption was not timely filed.

[2]   The Foundation then contended and now contends that it was entitled under G.S. 105-282.1(c) and G.S. 105-312(c) and (d) to receive notice from the tax supervisor that the property had been discovered and listed in its name and that it was entitled to appear before the Onslow County Board of Equalization and Review to contest the discovery with a right of additional appeal to the Tax Commission. We do not agree.

G.S. 105-312(c) requires the tax supervisor to carry forward to the lists of a current year all real property that was listed in the preceding year but not listed for the current year. When so carried forward, the property is to be listed "in the name of the taxpayer who listed it" in the preceding year. The Foundation would have us construe the phrase "in the name of the taxpayer who listed it" quite literally and limit its application in this case solely to a prior listing of the Forest in the name of the Foundation and by the Foundation. We do not find this interpretation of the language employed by the statute persuasive.

It is an elementary rule of statutory construction that, all sections and subsections of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable intendment. *In re Hickerson*, 235 N.C. 716, 71 S.E. 2d 129 (1952). Any irreconcilable ambiguity in such cases should be resolved so as to effectuate the true legislative intent. *Comr. of Insurance. v. Automobile Rate Office*, 287 N.C. 192, 214 S.E. 2d 98 (1975).

Applying these principles, we look to G.S. 105-312(a)(1) which defines the term "discovered property" as used in that statute and in the entire subchapter and provides it "shall include prop-

erty that was not listed by the taxpayer *or any other person* during a regular listing period." [Emphasis added.] With this legislatively mandated definition in mind, we conclude that the phrase "listed in the name of the taxpayer who listed it for the preceding year" as used in G.S. 105-312(c) includes a listing of property in the name of the taxpayer both when listed personally by the taxpayer and when listed in the taxpayer's name by "any other person," according to law, for the preceding year.

It is our duty to interpret the language of statutes so as not to lead to absurd results or contravene the manifest purpose of the statute and in such manner as will give effect to the reason and purpose of the law. *Hobbs v. County of Moore*, 267 N.C. 665, 149 S.E. 2d 1 (1966). This construction of the phrase promotes the object of the statute that all property be listed promptly, and recognizes the rule that a statute should not be construed to defeat or impair its object if that can reasonably be done without violence to the legislative language. *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975).

Having so interpreted the phrase, we turn to the language of G.S. 105-312(c) which, in some instances, requires notice to the taxpayer and the opportunity to appear pursuant to G.S. 105-312(d). Under the terms of G.S. 105-312(c), the notice and hearing requirements and procedures:

> [P]rescribed in subsection (d) . . . shall be followed unless the property discovered is *listed in the name of the taxpayer who listed it for the preceding year* and the property is not subject to appraisal under either G.S. 105-286 or G.S. 105-287 in which case no notice of the listing and valuation need be sent to the taxpayer. [Emphasis added.]

The provisions of G.S. 105-286 and G.S. 105-287 are not applicable in the present case. Therefore, as we have construed the phrase "listed in the name of the taxpayer who listed it for the preceding year" to include a listing in the name of that taxpayer by any other person according to law, the listing for the previous year by the tax supervisor in the name of the Foundation would remove any requirement of notice of discovery or granting of a hearing to the Foundation concerning its 1974 taxes. For reasons previously discussed, such listing by the tax supervisor is presumed, and no notice or hearing was required.

Having determined that no notice or hearing was required, we need not consider the issue of whether the county's letter of 13 January 1975 offering to allow the Foundation to make a presentation to the Onslow County Commissioners concerning its 1974 listing, coming after the adjournment of the Onslow County Board of Equalization and Review, was an adequate opportunity for a hearing. Neither are we called upon to decide whether the Foundation's letter of 29 January 1975 requesting a more or less indefinite deferral of the 1974 matter until action had been taken on the Foundation's 1975 application for exemption constituted a waiver of any hearing.

The Foundation's next contention concerns the listing of its property for 1975 ad valorem taxes. It is uncontested that the petitioner Foundation timely mailed an application for exemption of its Onslow County property to the county tax supervisor and that the application was timely received by an agent of the county. Mr. James Justice, the tax supervisor for Onslow County, testified, however, that he had not to his knowledge ever received the Foundation's application for exemption for 1975.

[3] The Foundation contends that general principles of law and G.S. 105-282.1 in particular require that Onslow County's failure to respond to the application require that it be deemed accepted for the year 1975. We specifically reject this contention and decline to hold that the failure of Onslow County to respond to the application for exemption established a presumption, rebuttable or otherwise, that the application for exemption had been granted.

It would appear that, on this point, both the county and the Foundation must accept some fault. Neither party's course of dealing with the other in this case is a model of efficiency.

[4] A more direct and knowledgeable approach by both parties to the problems involved possibly could have eliminated the need for the lengthy record, numerous exhibits and exhaustive briefs of the parties filed with this Court. In any event, it is difficult for us to determine how the Foundation has been denied any substantial right by the lack of a hearing at the county level due to its own inattentiveness compounded by that of the county. The Tax Commission has authority, notwithstanding irregularities at the county level, to review matters such as those presented in this

case. See, *In re Appeal of Broadcasting Corp.*, 273 N.C. 571, 579, 160 S.E. 2d 728, 733 (1968). The Foundation sought and received a full hearing *de novo* before the Tax Commission at which, unlike hearings before county boards, a full and complete written record was made. The Foundation has additionally sought and received a review of the Tax Commission's findings, conclusions and final decision before the Superior Court.

At the hearing before the Superior Court on the Foundation's petition for review of the final administrative action of the Tax Commission, the respondent county moved to dismiss the petition and sought to raise affirmative defenses. The record does not reveal that a similar motion was ever made before the Tax Commission or that the affirmative defenses were ever raised or argued there, despite the fact that there is specific precedent for hearings before the Tax Commission limited to the issues presented by motions to strike and dismiss. *Brock v. Property Tax Comm.*, 290 N.C. 731, 738, 228 S.E. 2d 254, 259 (1976).

[5] Our courts have long recognized that the public interest demands questions relating to the base of taxable property be settled as cheaply and speedily as possible consistent with due process. *Belk's Department Store, Inc. v. Guilford County*, 222 N.C. 441, 448, 23 S.E. 2d 897, 903 (1942). We hold that the respondent county waived any affirmative defenses it might have had by its failure to raise them before the Tax Commission, and the Superior Court properly overruled and denied the respondent's motion to dismiss. Additionally, as the appeal to the Tax Commission, the Superior Court and ultimately to this Court has been limited almost entirely to an effort to bring up for review assignments of errors of law arising from uncontested facts, we do not feel equity required the Superior Court or requires us now to take cognizance of the respondent's attempts to assert affirmative defenses which it did not present and argue before the Tax Commission.

The petitioner Foundation contends that the Tax Commission erred by failing to find the Forest property in Onslow County exempt from taxation under the terms of four specific statutory exemptions. Three of the four statutes relied upon by the Foundation as alternative grounds for exemption from ad valorem taxes require the property to have been used exclusively for the pur-

---

---

pose exempted. Each statute sets forth its own requirements, but each commands the property be exclusively used for the required purpose. The applicability of those statutes will, therefore, to a great extent hinge upon our construction of the term "exclusive use."

[6] The Foundation contends its Forest in Onslow County is exempt from taxation under G.S. 105-275(12) which excludes from the tax base:

> Real property owned by a nonprofit corporation or association *exclusively held and used by its owner for educational and scientific purposes as a protected natural area*. (For purposes of this subdivision, the term "protected natural area" means a nature reserve or park in which all types of wild nature, flora and fauna, and biotic communities are preserved for observation and study.) [Emphasis added.]

Not only the purpose for holding the real property but also its actual use determines whether it is to be excluded from or included in the tax base. Use, rather than ownership or objective, is the primary exempting characteristic of the Machinery Act, G.S. 105-271 through G.S. 105-395, which includes the statutes under consideration. H. Lewis, *Annotated Machinery Act of 1971*, (Supp. 1973, Comment, p. 55). While it is true that the Foundation holds the Forest for educational and scientific purposes, its use of the property is not limited to such purposes. The Foundation also uses the Forest to generate income by leasing it to the Corporation which, by the Foundation's own evidence, is primarily concerned with the use of the Forest as a supply of timber and pulpwood for its business. The amounts the Corporation pays its lessor, the Foundation, are the result of the Corporation's commercial activity, which the evidence revealed involves active competition with other commercial packaging corporations.

The Corporation's manager testified that the use of the Forest by the Corporation did involve some concern for it as an educational and scientific resource. He made it clear, however, that the Corporation's main interest in the Forest was as a source of timber for commercial activities.

No matter what euphemism is employed, it is readily apparent from the evidence that the Forest is used as a commercial

timber farm. That it is also used for scientific research is, at best, incidental.

The fact that the Foundation is precluded by its articles of incorporation from using any profits or revenues paid it under the lease for other than educational purposes is not determinative in this instance. It is the manner in which the real property itself is used which is to be determinative and not the purpose to which possible future profits may be put.

In *Rockingham County v. Elon College*, 219 N.C. 342, 13 S.E. 2d 618 (1941), rental property of Elon College was held non-exempt even though the college used the rental income exclusively for educational purposes. The determining factor seems to have been that the real property itself was used to generate income from commerce by renting it to businessmen. It was held in that case that Article V, sec. 5 [now Article V, sec. 2 (3)] of the Constitution of North Carolina, granting the General Assembly discretionary authority to exempt property held for educational purposes, was not subject to a construction permitting such exemptions. That case is analogous to the case *sub judice*. It is the commercial use of the real property by the lessee, the Corporation, that generates the Foundation's income and is determinative of whether the real property is "used exclusively" for an exempted purpose. The Forest is not, therefore, "used exclusively" for educational and scientific purposes. Rather, it is used primarily as commercial property.

The 1945 lease of the Forest by the Foundation to the Corporation, together with 1951 amendments thereto, is a lengthy and detailed document in the nature of a contract which must be construed according to the general rules governing the construction of contracts in ascertaining the intent of the parties. *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539 (1962). It would appear the parties never intended that the interests of the Foundation in using the Forest for educational purposes would override the Corporation's interests in using it as a timber farm. The contract, in the form of the lease, permitted the Foundation the use of the property for educational and scientific purposes only upon the condition that such study groups or students would do nothing whatsoever to interfere with any program undertaken or in progress by the Corporation in or on the Forest. As previously pointed out, the use of the property rigidly

complied with this section of the lease. The actual use of the property was almost exclusively for the commercial purposes of the Corporation with only incidental use for any other purposes.

[7]   Additionally, G.S. 105-275(12) requires that the real property exempted by its terms be held not only for educational and scientific purposes. There is the additional requirement that it be held for such purposes "as a protected natural area." Although the Foundation concedes it has engaged in extensive road building, draining and cutting in the Forest, it contends these activities have improved the habitat for deer and quail and should bring it within the definition of a "protected natural area." Following this line of reasoning, it could be argued that completely removing the timber and planting crops of corn and grain on the Foundation property each year would improve it by making it more conducive to certain forms of animal life. The property would, thereby, remain a "protected natural area." This, of course, would be to misconstrue the term "protected natural area."

We hold the term "protected natural area" to mean property which, insofar as possible, is kept in a pristine state free from those interferences which any given generation may feel to be "improvements" on nature. Mankind's judgment as to what constitutes an "improvement" on nature has been so frequently wrong in the past, that the General Assembly apparently wished to set aside some areas which, with the exception of minor alterations necessary for observation and study, would be left free from direct tampering by humans. We conclude the General Assembly intended the protection of such natural areas be of a passive nature designed to prevent manmade or natural disasters and not of an active nature envisioned as "improvements" of the areas.

We are not called upon to consider and do not hold that such activities as placing fire towers in an area or removing injured or diseased animals would be activities of a type so interfering with the area as to remove its status as a "protected natural area." Such questions are best left for cases in which they are presented squarely for consideration. We do hold, however, that the use to which the Foundation put its Forest in Onslow County did not qualify it as a "protected natural area."

Statutes exempting property from taxation due to the purposes for which such property is held and used must, of course,

be strictly construed against exemption and in favor of taxation. *Harrison v. Guilford County*, 218 N.C. 718, 12 S.E. 2d 269 (1940); *Piedmont Memorial Hospital v. Guilford County*, 218 N.C. 673, 12 S.E. 2d 265 (1940). In the present case, we need not rely on this rule of construction, as whether judged by the "exclusive use" or "protected natural area" tests, the Foundation's property clearly falls outside the terms of G.S. 105-275(12).

[6] With one exception which will be discussed, the remaining statutes relied on by the Foundation also employ the "exclusive use" test. Under the stipulated facts in this case, the Foundation simply does not pass that test. G.S. 105-278.4 exempts real and personal property used for educational purposes if *"[w]holly and exclusively used for educational purposes* by the owner *or* occupied gratuitously by another non-profit educational institution . . . *and wholly and exclusively used by the occupant for non-profit educational purposes."* [Emphasis added.] The *Rockingham* case and our previous discussion in this case require that we hold the Foundation does not use the Forest exclusively for educational purposes. Additionally, as previously noted, the Foundation's evidence itself makes it clear that the Corporation does not occupy the property gratuitously or exclusively for nonprofit educational purposes. The exemption set forth in G.S. 105-278.4 does not, therefore, apply.

The Foundation additionally contends it is entitled to an exemption under the terms of G.S. 105-278.6(7). Even if the Foundation as owner of the property is, as required by the statute, "[a] nonprofit, life saving, first aid, or rescue squad operation," it does not qualify for the exemption. The statute provides that property of such organizations shall be exempt from taxation if "[a]s to real property, it is actually and exclusively occupied and used, and as to personal property, it is entirely and completely used, by the owner for charitable purposes." For reasons previously pointed out, the Forest was not exclusively used for "charitable purposes" as defined within the statute.

[8] Finally, the Foundation contends the Forest is owned by the University of North Carolina and exempt from taxation under G.S. 116-16. Article V, sec. 2 (3) of the Constitution of North Carolina commands, *inter alia*, that property belonging to the State shall be exempt from taxation. The Foundation contends

that the Forest is owned by North Carolina State University as a branch of the University of North Carolina and exempt under G.S. 116-16, which is founded on the constitutionally mandated exemption of State owned property. It is clear, however, that North Carolina State University is merely represented on the Foundation's Board of Directors. Although it is to receive the Foundation's assets, if any, upon dissolution, it has neither legal nor beneficial ownership of the Forest. The Foundation is now, and has been from the original purchase, the sole owner of the Forest. Additionally, the stipulated evidence tends to indicate that the Foundation's Board of Directors is in no way controlled by North Carolina State University and apparently has the power to act without regard to the wishes of the University. The Foundation being the sole owner of the Forest, G.S. 116-16 does not exempt or exclude the property from taxation.

For reasons previously stated, the judgment of the Superior Court affirming the Tax Commission is

Affirmed.

Judges MORRIS and CLARK concur.