278 S.E.2d 321 (1981)
APPALACHIAN POSTER ADVERTISING COMPANY
v.
ZONING BOARD OF ADJUSTMENT OF the CITY OF SHELBY, N. C. and Bob Hamilton, Director of Building and Zoning of the City of Shelby, N. C.
No. 8027SC950.
Court of Appeals of North Carolina.
June 2, 1981.
*323 Whisnant, Lackey & Schweppe by N. Dixon Lackey, Jr., Shelby, for petitioner-appellant.
*324 Kennedy, Church, Young & Paksoy by William C. Young, Shelby, for respondent-appellee.
ROBERT M. MARTIN, Judge.
The standard for Superior Court review of a Board of Adjustment decision is as follows:
Upon such review, the findings of fact made by the Board, if supported by evidence introduced at the hearing before the Board, are conclusive. In re Application of Hasting, 252 N.C. 327, 113 S.E.2d 433; In re Pine Hill Cemeteries, Inc., 219 N.C. 735, 15 S.E.2d 1. The matter is before the Court to determine whether an error of law has been committed and to give relief from an order of the Board which is found to be arbitrary, oppressive or attended with manifest abuse of authority. Durham County v. Addison, 262 N.C. 280, 136 S.E.2d 600; Lee v. Board of Adjustment, 226 N.C. 107, 37 S.E.2d 128. It is not the function of the reviewing court, in such a proceeding, to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board. It may vacate an order based upon a finding of fact not supported by evidence.
In Re Campsites Unlimited, 287 N.C. 493, 215 S.E.2d 73 (1975). The arguments in petitioner-appellant's brief are directed at the findings and conclusions of the Board which the Superior Court, applying the above standard for review, has upheld.
Petitioner first argues that there is no evidence to support the Board's finding that there were originally two separate and distinct non-conforming billboard structures. The Superior Court found substantial competent and material evidence to support this finding, and we agree. Petitioner's president, Walter J. Hogan, testified before the Board as follows:
The two advertising signs before the work was done might have been joined or might not. We're not sure, we've got them both ways. I don't know whether the signs out there were visibly joined together or not before the work was done.
Before the work was done, I just couldn't say how far apart or how close the two sign faces were together. My recollection of it is that they were very close but it's been at least a year or so before this came up that I had actually looked at it.
We had six poles in a line that took up forty-eight feet and had two separate signs that did not touch, that is the original signs. There was some space, whether it was an inch or four to six inches which did not touch each other, which made it in the opinion of the Building Inspector two signs.
I originally built two individual posters. They were built in an aligned pattern.
In other parts of his testimony, Hogan referred to the billboard structures as "two signs" and he stated, "When you have two signs side by side, it is possible to remove one sign and leave the other side standing and it would be structurally sound and we could see it." Bob Hamilton, the building inspector, testified:
Based upon my memory and as well as I recall, there were two billboard structures that were located side by side in line, one with the other, each was supported by three poles in the ground and there were two separate advertising copy areas mounted on each of the three sets of poles for each structure.
The evidence supports the Board's first finding of fact.
Petitioner next challenges the Board's second finding. The first aspect of this finding, to the effect that one of the billboard structures was completely removed, is supported by the evidence. Hogan testified that both of the original display faces were taken down, but he was not sure which of the original poles were replaced. Hamilton testified, "The three poles which were replaced on the billboard were the ones which if you were standing on the site, it was the billboard to your left and they were all three on the same billboard on the left."
*325 The remainder of this finding, to the effect that the billboard structure ceased to exist as a non-conforming use when it was completely removed and could not be replaced, is in reality a conclusion of law. Consideration of it requires examination of the relevant zoning ordinances. They are:
Sec. 60. Use.
No building or land shall hereafter be used or occupied and no building or structure or part thereof shall be erected, moved or structurally altered except in conformity with the regulations of this ordinance, or amendments thereto, for the district in which it is located.
. . . . .
Sec. 70. Non-conforming uses.
Any building, structure or use of land, existing at the time of the enactment of this section, or any amendment thereto, used for a purpose not permitted in the zoning district in which it is located shall be considered a non-conforming use. However:
70.3 A non-conforming use may not be extended or enlarged, nor shall a non-conforming structure be altered except as follows:
70.31 Structural alterations as required by law or ordinance or as ordered by the zoning enforcement office to secure the safety of the structure are permissible.
70.32 Maintenance and repair necessary to keep a non-conforming use in sound condition are permissible.
. . . . .
70.4 A non-conforming use may not be re-established after discontinuance for a period of three hundred and sixty-five (365) days....
. . . . .
71.3 Maintenance. All advertising structures, together with any supports, braces, guys, and anchors shall be kept in repair and in a safe state of preservation. All signs erected to serve a temporary purpose shall be removed within thirty (30) days from the date the purpose ceased to exist.
In In re O'Neal, 243 N.C. 714, 92 S.E.2d 189 (1956), our Supreme Court held that a frame building used as a nursing home could be replaced with a new fireproof structure and the non-conforming use of the premises could be continued so long as the scale of the nursing home operations was not substantially increased; however, the zoning ordinances involved in O'Neal did not prohibit structural alterations. We find Goodrich v. Selligman, 298 Ky. 863, 183 S.W.2d 625 (1944), to be instructive. In Goodrich a building permit was granted for general repairs pursuant to which an outdoor advertising company removed certain old billboards and replaced them with new ones. There, as here, a zoning ordinance prohibited structural alterations except those required by law or ordinance. The Kentucky Court of Appeals held that the permit should not have been granted. The Court wrote:
In Selligman v. Von Allmen Bros., 297 Ky. 121, 179 S.W.2d 207, 209, this same zoning ordinance of the city of Louisville was before us for construction, and we construed section 10 of the ordinance to mean that the owner can make no structural alteration in a non-conforming building which will indefinitely prolong its life. In the course of the opinion it was said:
"The theory of zoning is to foster improvement by confining certain classes of buildings and uses to certain localities without imposing undue hardship upon the property owners. The present use of a non-conforming building may be continued but it cannot be increased nor can it be extended indefinitely if zoning is to accomplish anything. It is customary for zoning ordinances to provide that the life of non-conforming buildings cannot be increased by structural alterations and when a change is made by the owner in the building, he must make it conform to the ordinance."
The following was quoted from the opinion in A. L. Carrithers & Son v. City of Louisville, 250 Ky. 462, 63 S.W.2d 493, 497:

*326 "`Structural alterations' intended to be prohibited by the zoning ordinance are the changing an old building in such a way as to convert it into a new or substantially different structure."
In the Von Allmen Bros. case the owner substituted permanent brick walls for rotted exterior wooden walls, and it was held this would extend the life of the non-conforming building and was forbidden. Here a new structure was substituted for an old one. If it is proper to do this once it will be proper to do it again and thus the life of the non-conforming structure will be indefinitely prolonged, and the whole purpose of the zoning ordinance will be defeated.
Id. 298 Ky. at 867-68, 183 S.W.2d at 627-28. See generally Annots., 80 A.L.R.3d 630 (1977) and 87 A.L.R.2d 4 (1963). Non-conforming uses are not favored by the law. Most zoning schemes foresee elimination of non-conforming uses either by amortization, see State v. Joyner, 286 N.C. 366, 211 S.E.2d 320, appeal dismissed 422 U.S. 1002, 95 S.Ct. 2618, 45 L.Ed.2d 666 (1975), or attrition or other means. 8A McQuillin, Municipal Corporations § 25.183 (3rd ed., 1976 rev. vol.); 82 Am.Jur.2d, Zoning and Planning § 179 (1976). In accordance with this policy, zoning ordinances are strictly construed against indefinite continuation of non-conforming uses. Id. § 180. Where, as is the case herein, the non-conformity consists in the character of the structure, apart from the use to which it is devoted, the right to make repairs has generally been limited to such as are merely routine or ordinary and which would not result in the extension of the normal life of the structure, and the replacement of a structure which has become unuseable from natural deterioration has been held not permissible. Id. § 209; Annot., 87 A.L.R.2d 4, § 18 (1963). Further, in accordance with the policy of eliminating non-conforming uses, several courts have given a strict construction to zoning ordinances allowing for the resumption of a non-conforming use. 82 Am.Jur.2d, supra, § 221; Annot., 57 A.L.R.3d 279, § 8 (1974). In the present case, the Board has taken the position that the replacement of the one billboard structure which was completely removed went beyond structural alterations as permitted by Section 70.31 and beyond maintenance and repair as permitted by Section 70.32. The Board has also concluded that Section 60, which provides that no structure shall be erected except in conformity with the zoning regulations, applies to these facts and that Section 70.4, which implicitly allows re-establishment of a non-conforming use after a discontinuance of less than 365 days, does not apply. In light of the above authorities, we cannot say that the Board's approach herein is unsupported by findings of fact, unfounded in the law or arbitrary.
Once it is accepted that one of the original billboards was completely removed and could not lawfully be replaced, it follows logically that the addition of three new poles and the erection of a new 12 foot by 47½ foot display face amounted to the enlargement, extension and structural alteration of the remaining original billboard. Further, we have little trouble with the proposition that the addition of fluorescent lighting which was directed at the new display face and which increased the amount of unnatural light in the area also violated Section 70.3 of the zoning ordinances. The Board's third and fourth findings are therefore affirmed.
We agree with the Superior Court that the Board could have reached a decision in favor of the petitioner on the evidence presented. However, it is not the province of the reviewing court to substitute its opinion for that of the Board so long as a reasonable basis exists for the Board's action. Mindful of the standard for judicial review in this proceeding, we affirm.
Affirmed.
WHICHARD and BECTON, JJ., concur.