CG&T CORPORATION v. BOARD OF ADJUSTMENT OF THE CITY OF WILMINGTON

No. 915SC528

(Filed 7 January 1992)

**1. Municipal Corporations § 30.19 (NCI3d) — nonconforming use discontinued — intent of landowner irrelevant**

Respondent board of adjustment properly informed petitioner that it would need to obtain a special use permit for oil refinery operations to resume on its property because the use of the property as an oil refinery had been discontinued for greater than 365 days, and there was no merit to petitioner's claim that, had respondent considered petitioner's intent surrounding the facility's operation, it would have reached a conclusion that the activity had been neither discontinued nor abandoned, since neither the term "abandon" nor "discontinue" was defined by the city code; the term "abandon" was found only in the catch line of the code provision and not the text; it was the function of respondent to interpret its

CG&T CORP. v. BD. OF ADJUSTMENT OF WILMINGTON

[105 N.C. App. 32 (1992)]

own city code; and petitioner's intent to resume operations was therefore irrelevant in determining whether the property's use as a refinery had been discontinued.

**Am Jur 2d, Zoning and Planning §§ 214, 215, 219-221.**

2. **Municipal Corporations § 30.19 (NCI3d) — discontinuance of nonconforming use — findings supported by substantial evidence**

Respondent's decision that petitioner had discontinued use of its property as an oil refinery and requiring petitioner to obtain a special use permit before resuming such use of its property was supported by competent, material, and substantial evidence, since the pleadings, testimony of witnesses, and other evidence as a whole supported respondent's conclusion that petitioner had discontinued use of the property as an oil refinery facility while maintaining the property as an oil storage terminal.

**Am Jur 2d, Zoning and Planning §§ 217-219, 222.**

3. **Municipal Corporations § 30.21 (NCI3d) — newly discovered evidence — proceedings not reopened — no denial of due process**

Petitioner was not denied due process of law by respondent board of adjustment's refusal to reopen a hearing on discontinuance of a nonconforming use to allow petitioner to present additional evidence which it contended was newly discovered.

**Am Jur 2d, Zoning and Planning § 317.**

APPEAL by petitioner from Order entered 28 February 1991 by *Judge Gary E. Trawick* in NEW HANOVER County Superior Court. Heard in the Court of Appeals in Wilmington on 17 October 1991.

*Staton, Perkinson, Doster, Post, Silverman and Adcock, by Jonathan Silverman, for petitioner appellant.*

*City Attorney Thomas C. Pollard and Assistant City Attorney Robert W. Oast, Jr., for respondent appellee.*

COZORT, Judge.

Petitioner owns an oil refining facility located in an area zoned for heavy manufacturing in Wilmington, North Carolina. Prior to May 1990, petitioner operated on a pre-existing nonconforming

use basis. On 2 May 1990, the city code officer informed petitioner it would need to obtain a special use permit for the operations to resume, because the use of the property as an oil refinery had been discontinued for greater than 365 consecutive days. The Wilmington Board of Adjustment and Superior Court of New Hanover County upheld the code officer's determination. We affirm.

Petitioner CG&T is a Utah corporation authorized to do business in North Carolina. Petitioner's authorized activities include the refining of crude oil and the selling of refined petroleum products. In 1986, CG&T acquired an 18-acre oil refining facility located on the Cape Fear River in Wilmington, North Carolina, for $18 million. This facility, located at 801 Surry Street, is in an area of Wilmington zoned Heavy Manufacturing, or "HM." Oil refining was a permitted use in the HM area until 1 August 1984, when the zoning ordinance was revised. Following the revisions, CG&T's predecessor, and later CG&T itself continued to lawfully operate the facility as a valid pre-existing nonconforming use under the Wilmington City Code.

On 2 May 1990, Wilmington's code enforcement officer determined that use of the property as an oil refinery had discontinued in excess of 365 consecutive days. Due to the discontinuance, CG&T would need to acquire a special use permit in order for CG&T to operate the oil refinery. CG&T disagreed with the code officer's order and appealed the finding to the Wilmington Board of Adjustment ("Board"). The Board conducted an evidentiary hearing on 19 June 1990. The evidence presented by the parties at the hearing tended to show: CG&T held valid permits required to operate an oil refinery in North Carolina which included an Air Quality Permit, a Water Quality Permit, and an Oil Refining Facility Permit. It was unnecessary for CG&T to file any reports required by various state and federal regulatory agencies after February 1988 because no process discharge was released. Other testimony at the hearing indicated no oil had been delivered to the property nor had any oil been refined or processed at the refinery site since CG&T took over the operation in 1986. The only sale of oil occurred in 1989, when CG&T sold 400,000 gallons of refined product stored on the site. Also in 1989, the crude oil which had been stored at the area since CG&T's acquisition of the property was transferred into one storage tank. CG&T did not operate its distillation tower in the year prior to the code officer's order because oil prices made the tower's operation cost ineffective.

CG&T CORP. v. BD. OF ADJUSTMENT OF WILMINGTON

[105 N.C. App. 32 (1992)]

Additional evidence demonstrated CG&T had no employees working at the site from March 1986 to July 1987 and again from November 1987 through February 1988. From July 1987 through November 1987, CG&T employed six workers at the property. During that time, some of the equipment on site was inspected, tested, maintained and repaired. During the period from February 1988 until April 1990, CG&T employed one individual, Robert Prevatte, at the location. Prevatte worked part time and had an irregular schedule. He usually worked alone and locked the plant gate and office door while at work. He stated twenty to twenty-five people would be needed to operate the oil refining facility at a minimum level; full operation would require a work force of approximately sixty.

The Wilmington City Code Enforcement Officer, Charles Holden, stated he visited the site on four separate occasions between July 1987 and April 1990. On each of the visits, Holden observed chained and locked gates and did not view anyone on the premises. The facility did not appear to be operating or open for business. A Wilmington resident who lives near the property testified that he observed the property at various times of the day for more than 500 times from March 1986 through April 1990. The resident indicated the facility appeared to be inoperative on each occasion. The State air quality inspector observed the property on annual inspection visits and on other occasions to investigate air quality complaints in the area from 1988 to 1990. He also noted the lack of activity at the oil refinery facility. Furthermore, the Wilmington City Directory stated that the property was vacant in 1987 and 1988.

Based on the above, and other evidence, the Board determined by a three to two vote that CG&T's nonconforming use of the refinery facility had *not* been discontinued. N.C. Gen. Stat. § 160A-388(e) (Cum. Supp. 1991), however, which establishes the procedure for the Board of Adjustment, reads: "The concurring vote of four-fifths of the members of the board shall be necessary to reverse any order, requirement, decision, or determination of any administrative official charged with the enforcement of an ordinance adopted pursuant to this Part . . . . " Therefore, the code officer's initial determination was affirmed pursuant to the statute in spite of the three to two vote against the code officer's finding. The superior court affirmed the Board of Adjustment's decision. Petitioner appeals.

Petitioner contends on appeal: (1) the superior court erred by affirming the Board of Adjustment's decision that CG&T had discontinued the nonconforming use of its oil refining facility within the meaning of Section 19-87 of the Wilmington City Code, and (2) the superior court erred in affirming the Board of Adjustment's order denying CG&T's motion to reopen the evidence. With respect to the first issue, petitioner raises three questions: (a) whether the Board and superior court should have considered CG&T's intent in deciding the discontinuance issue; (b) whether the Board's decision was supported by competent, material and substantial evidence; and (c) whether the Board's decision was arbitrary and capricious.

N.C. Gen. Stat. § 160A-388(e) (Cum. Supp. 1991) provides, "[e]very decision of the board shall be subject to review by the superior court by proceedings in the nature of certiorari." When a superior court reviews the decision of a Board of Adjustment on certiorari, the court sits as an appellate court. *Batch v. Town of Chapel Hill*, 326 N.C. 1, 387 S.E.2d 665 (1990). The Administrative Procedure Act ("APA"), codified in Chapter 150B of the North Carolina General Statutes, does not apply to the decisions of town boards. Although the APA does not provide judicial review for cities and other local units of government, a similar standard of review is employed to review city council special zoning request decisions. *Jennewein v. City Council*, 62 N.C. App. 89, 302 S.E.2d 7, *disc. review denied*, 309 N.C. 461, 307 S.E.2d 365 (1983). The standard of review for town board decisions has been defined by the Supreme Court in *Coastal Ready-Mix v. Board of Com'rs*, 299 N.C. 620, 265 S.E.2d 379, *rehg denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). The superior court should determine the following: (1) whether the Board committed any errors in law; (2) whether the Board followed the procedures specified by law in both statute and ordinance; (3) whether the appropriate due process rights of the petitioner were protected, including the rights to offer evidence, cross-examine witnesses, and inspect documents; (4) whether the Board's decision was supported by competent, material and substantial evidence in the whole record; and (5) whether the Board's decision was arbitrary and capricious. *Id.* at 626, 265 S.E.2d at 383. Despite the APA's inapplicability to town board decisions, it is well recognized that "while the specific review provision of the North Carolina APA is not directly applicable, the principles that provision embodies are highly pertinent." *Id.* at 625, 265 S.E.2d at 382.

CG&T CORP. v. BD. OF ADJUSTMENT OF WILMINGTON

[105 N.C. App. 32 (1992)]

[1] In the case below, petitioner first argues both the Board and the superior court erred as a matter of law in interpreting and applying the term "discontinuance" as used in the Wilmington City Code. This Court has held:

> [I]f it is alleged that an agency's decision was based on an error of law then a *de novo* review is required. " 'When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review.' "

*Brooks, Com'r. of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988) (citations omitted). Petitioner contends the Board should have examined CG&T's intent prior to concluding that CG&T had discontinued its operation of the oil refining facility. In support of this argument, petitioner refers us to Wilmington City Code Sec. 19-87, which provides:

*Abandonment and discontinuance of nonconforming situations.*

(a) When a nonconforming use is discontinued for a consecutive period of three hundred sixty-five (365) days, the property involved may thereafter be used only for conforming purposes, except for those structures qualifying under section 19-85(h).

(b) For purposes of determining whether a right to continue a nonconforming situation is lost pursuant to this section, all of the buildings, activities, and operations maintained on a lot are generally to be considered as a whole. . . .

If a nonconforming use is maintained in conjunction with a conforming use, discontinuance of a nonconforming use for three hundred sixty five (365) days shall terminate the right to maintain it thereafter.

The Board interpreted the above Code provisions and reached in part the following conclusions of law:

1. The Wilmington City Code, § 19-87(a), provides that a nonconforming use that has been discontinued for a period of 365 consecutive days may not be resumed; there is no requirement that a discontinuance of a nonconforming use under this section must be with the intent not to resume the use.

2. "Discontinue," as used in the Wilmington City Code § 19-87(a) is not synonymous with "abandon" and does not require *an intention to abandon the nonconforming use.*

\* \* \* \*

9. The use of the 801 Surry Street Properties as an oil storage facility does not affect the discontinuance of its use as an oil refinery facility.

\* \* \* \*

12. Therefore, the use of the 801 Surry Street Properties as an oil refinery has been discontinued for a period of 365 consecutive days and may not be resumed unless a Special Use Permit is obtained.

Petitioner CG&T challenges these conclusions by advancing a theory which equates the term "discontinue" with "abandon." Petitioner claims had the Board considered CG&T's *intent* surrounding the facility's operation, it would have reached a conclusion that the activity had been neither discontinued nor abandoned. We disagree with petitioner's interpretation of the zoning ordinance.

First, neither the term "abandon" nor "discontinue" is defined by the City Code. The dictionary meaning of "abandon" is "to cease to assert an interest, right or title to, with the intent of never again resuming or reasserting it." Webster's New International Dictionary (3d ed. 1976) at page 2. In contrast, the primary meaning of "discontinue" is "to break off; give up: terminate: end the operation or existence of: cease to use." *Id.* at page 646. The plain meaning of these words demonstrates that although intent is a necessary component of "abandon," intent need not be a factor in determining whether an activity has been discontinued.

Second, the term "abandon" is found only in the catch line of the Code provision and not in the text of Sec. 19-87. A general provision of the City Code, in Sec. 1-4 provides:

The catchlines of the several sections of this Code printed in bold face type are intended as mere catchwords . . . and shall not be deemed to be titles of such sections, nor as any part of the section . . . .

As a rule of construction, the catch lines or titles do not control the interpretation of the Code. *Blowing Rock v. Gregorie*, 243 N.C.

364, 371, 90 S.E.2d 898, 903 (1956). The word "discontinue" is the term upon which the text of the ordinance focuses. The fact that the catch line is worded in the conjunctive rather than disjunctive does not establish the words "abandon" and "discontinue" as synonyms.

Finally, it is long recognized that one of the functions of a Board of Adjustment is to interpret local zoning ordinances. *Harden v. Raleigh*, 192 N.C. 395, 135 S.E. 151 (1926). Although we apply a *de novo* review to this issue, we still give some deference to the Board's interpretation of its own City Code. Furthermore, the case law supports the Board's conclusion. Petitioner offers various cases to support its argument that the Board erred as a matter of law by failing to consider CG&T's intent in arriving at its decision. Rather than analyzing each case individually, we deem it sufficient to note that these cases are readily distinguishable from the present case. None of the cases cited stands for the proposition that "discontinue" is synonymous with "abandon." Rather, those cases indicate that unless a term is modified or defined specifically within the ordinance in which it is referenced, then the term should be assigned its normal meaning. *See, e.g., Forsyth Co. v. Shelton*, 74 N.C. App. 674, 329 S.E.2d 730, *disc. review denied*, 314 N.C. 328, 333 S.E.2d 484 (1985); *Southern Equip. Co. v. Winstead*, 80 N.C. App. 526, 342 S.E.2d 524 (1986). Instead, the cases are more valuable as illustrations of the time honored maxim, "the law does not favor forfeitures and statutes authorizing them must be strictly construed." *Id.* at 528, 342 S.E.2d at 525. While acknowledging this rule, we note the following important policy:

> Non-conforming uses are not favored by the law. Most zoning schemes foresee elimination of non-conforming uses either by amortization, or attrition or other means. In accordance with this policy, zoning ordinances are strictly construed against indefinite continuation of non-conforming uses.

*Appalachian Poster Advertising Co. v. Board of Adjustment*, 52 N.C. App. 266, 274, 278 S.E.2d 321, 326 (1981) (citations omitted). Consequently, we find the Board of Adjustment's interpretation of "discontinue" within Sec. 19-87 of the City Code consistent with current law and rules of construction. We find petitioner CG&T's intent to resume operations irrelevant in determining whether the property's use as a refinery had been discontinued.

[2] Petitioner next contends the Board's decision was not supported by competent, material, and substantial evidence. As noted previously, one of the responsibilities of a reviewing court is "[i]nsuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record." *Coastal Ready-Mix*, 299 N.C. at 626, 265 S.E.2d at 383. Similar to review under the APA, the standard of judicial review in the present case is the "whole record" test as to this issue. The court reviewing an administrative decision must inspect all of the competent evidence which comprises the "whole record" to determine whether substantial evidence exists to support the administrative body's findings and conclusions. *Henderson v. North Carolina Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). Substantial evidence is that which a reasonable mind would regard as sufficiently supporting a specific result. *Walker v. North Carolina Dept. of Human Resources*, 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). When the Court of Appeals applies the whole record test and reasonable but conflicting views emerge from the evidence, the Court cannot substitute its judgment for the administrative body's decision. *General Motors Corp. v. Kinlaw*, 78 N.C. App. 521, 523, 338 S.E.2d 114, 117 (1985). The Court, however, must " 'take into account whatever in the record fairly detracts from the weight' of the evidence which supports the decision." *Id.* (quoting *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) ). The Court must ultimately decide whether the decision "has a rational basis in the evidence." *Id.*

Upon reviewing the entire record in the case at bar, we conclude the Board's decision was supported by competent, material and substantial evidence. The pleadings, testimony of witnesses, and other evidence as a whole support the Board's conclusion that petitioner had discontinued use of the property as an oil refinery facility, while maintaining the property as an oil storage terminal, a conforming use. In short, the record provides ample evidence that the oil refining activities at the site had ceased completely for over 365 days.

Petitioner next alleges the Board's decision was arbitrary and capricious. The "whole record" test is also applied when a court determines whether a board's decision is arbitrary and capricious. *Brooks*, 91 N.C. App. at 463, 372 S.E.2d at 347. Petitioner believes the "haphazard way in which the Board defined the legal issues"

CG&T CORP. v. BD. OF ADJUSTMENT OF WILMINGTON

[105 N.C. App. 32 (1992)]

demonstrates the arbitrariness of the Board's position. Specifically, petitioner disputes the Board's concept of "discontinue." Petitioner's argument is without merit. The duty of the Board is to give meaning to undefined terms within zoning ordinances so long as the interpretations are within the bounds of the law. Because we have already determined such an interpretation is consistent with legal principles, we find nothing arbitrary or capricious about the Board's decision.

[3]   Lastly, petitioner argues the superior court erred in affirming the Board's order denying CG&T's motion to reopen the evidence. Following the Board's initial vote, but prior to the hearing on the question of reconsideration, petitioner moved to reopen proceedings to present additional evidence it contended was newly discovered. The Board declined to reopen the proceedings, and petitioner argues this denial amounted to a denial of due process of law. We cannot agree. Like a court, the Board has the discretion to deny motions as long as such denials do not constitute an abuse of discretion. *Sink v. Easter*, 288 N.C. 183, 217 S.E.2d 532 (1975). Due diligence must be shown for a court to grant a motion to reopen proceedings for the purpose of introducing newly discovered evidence. *Harris v. Family Medical Center*, 38 N.C. App. 716, 248 S.E.2d 768 (1978). Here, petitioner did not demonstrate how the evidence sought to be introduced could not have been discovered with due diligence prior to the initial evidentiary hearing. Although the evidence may have been helpful to CG&T's case, petitioner cannot demonstrate how the denial of its motion inhibited CG&T's full and fair opportunity to present its case. The superior court's disposition of this issue is also affirmed.

For the reasons stated, the trial court's order is

Affirmed.

Judges ARNOLD and LEWIS concur.