HUNTINGTON PROPERTIES, LLC, A MICHIGAN LIMITED LIABILITY CORPORATION, AND CAROLINA VILLAGE, LLC, A MICHIGAN LIMITED LIABILITY CORPORATION, PLAINTIFFS v. CURRITUCK COUNTY, ELDON L. MILLER, JR., S. PAUL O'NEAL, ERNIE BOWDEN, GENE A. GREGORY AND J. OWEN ETHERIDGE, IN THEIR OFFICIAL CAPACITIES, DEFENDANTS

No. COA01-884

(Filed 1 October 2002)

## 1. Zoning— mobile home park—prohibition on expansion of nonconforming use

The trial court did not err in a declaratory judgment action by granting defendant county's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) based on its interpretation of defendant county's Uniform Development Ordinance (UDO) §§ 1507(3) and 1504(9) to prevent plaintiffs from upgrading their wastewater treatment system to serve existing but unoccupied rental spaces in the pertinent mobile home park, because: (1) the UDO, both before and after its amendment, prohibited expansion of plaintiffs' nonconforming use to the additional existing spaces since there was no state permit to sell those additional spaces; and (2) at the time the mobile home park became a nonconforming use it was only permitted to rent a total of 140 spaces, and not its full capacity of 440 spaces, based on the water limits.

## 2. Zoning— mobile home park—nonconforming use—vested rights doctrine

The trial court did not err in a declaratory judgment action by granting defendant county's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claim regarding defendant county's authority to zone property and to regulate and prohibit the expansion of nonconforming uses based on its interpretation of defendant county's Uniform Development Ordinance (UDO) Article 15 even though plaintiffs contend it impaired plaintiffs' vested right to repopulate the entire pertinent mobile home park up to the original capacity of 440 units, because: (1) plaintiffs cannot show that they had either the county's permission or a valid permit authorizing them to expand the mobile home park to 440 units before the amendment was enacted in 1996, and plaintiffs cannot prove they made substantial expenditures in reliance on a permit or permission from the county; (2) plaintiffs never obtained a final interpretation of the UDO from the county's planning staff; (3) plaintiffs failed to follow the proper avenue for

appealing their situation; (4) plaintiffs' proposed upgrade in the mobile home park's wastewater treatment system was an increase in the extent of the nonconforming use, and defendants' attempts to prevent this expansion is in harmony with the State's policy of construing ordinances against the expansion of a non-conforming use; and (5) plaintiffs could have learned of the existence and details of the permits through means other than just legal discovery procedures.

**3. Zoning— county's authority—prohibition on expansion of nonconforming use**

The trial court did not err in a declaratory judgment action by granting defendant county's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claim regarding defendant county's authority to zone property and to regulate and prohibit the expansion of nonconforming uses, and by ruling the General Assembly did not grant exclusive authority in the Department of Environment and Natural Resources to regulate wastewater treatment systems, because: (1) defendant county's amendment was a proper exercise of its powers to control land use within the territorial jurisdiction of the county and controls with the county's territorial jurisdiction; and (2) there was no discord between state regulations regarding wastewater treatment systems and the county's amendment.

**4. Zoning— county's authority—prohibition on expansion of nonconforming use—due process—equal protection**

The trial court did not violate plaintiffs' federal and state constitutional rights to due process and equal protection in a declaratory judgment action by granting defendant county's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claim regarding defendant county's authority to zone property and to regulate and prohibit the expansion of nonconforming uses, because: (1) it is a legitimate interest as a matter of law to legislate against the expansion or continuation of nonconforming uses; (2) preventing the growth of nonconforming uses represents a conscious effort on the part of the legislative body to regulate the use of land and thus promote the health, safety, or general welfare of the community; and (3) plaintiffs have failed to successfully demonstrate that the county violated their equal protection rights when classifications are presumed valid under the lower tier rational basis test.

HUNTINGTON PROPS., LLC v. CURRITUCK CTY.

[153 N.C. App. 218 (2002)]

Appeal by plaintiffs from order entered 15 March 2001 by Judge William C. Griffin, Jr., in Currituck County Superior Court. Heard in the Court of Appeals 24 April 2002.

*Smith Helms Mulliss & Moore, L.L.P., by Thomas E. Terrell, Jr., and Neale T. Johnson, for plaintiff appellants.*

*Poyner & Spruill, by Robin L. Tatum and Kacey C. Sewell, for defendant appellees.*

McCULLOUGH, Judge.

This case arises from a declaratory judgment action, the pertinent facts of which are as follows: In July 1995, Dutch Key Corporation (Dutch Key) purchased Orchard Park, a 90-acre mobile home park in Currituck County, North Carolina. Orchard Park was constructed in 1972 and was approved to accommodate 440 mobile homes on the land, including pads, sewer, water, and electrical connections. At the time Orchard Park opened, it was a permitted use under Currituck County (County) zoning. After Orchard Park opened, but prior to its purchase by plaintiffs, the County adopted the Uniform Development Ordinance (UDO); Article 15 of the UDO governed "nonconforming situations." In 1992, the County amended the UDO to prohibit mobile home parks altogether, except as lawful nonconforming uses, which Orchard Park was. Orchard Park retained its status as a legal non-conforming use under UDO §§ 1501(1)(g) and 2501. As a result of the County's amendments to the UDO, Orchard Park has operated as a nonconforming use since at least November 1992.

Orchard Park operated near capacity in the 1970s and 1980s. During that time, Orchard Park's owners provided sewer services to its residents using a private wastewater treatment system. The system was approved by the State of North Carolina; when such approvals were later assigned to the Division of Environmental Management (DEM), DEM also approved the system. During the 1980s, environmental regulations concerning private wastewater treatment systems became more demanding. By 1987, Orchard Park's wastewater treatment system could only service about 140 mobile home residents, due to a 29,000 gallon daily limit on the amount of treated water that could be sprayed onto the system's spray fields.

The 1992 UDO restricted owners from enlarging or increasing the nonconforming use by altering structures or placing new structures on open land if such activity resulted in

(a) an increase in the total amount of space devoted to a non-conforming use; or

(b) greater nonconformity with respect to dimensional restrictions such as setback requirements, height limitations or density requirements or other requirements such as parking requirements.

UDO § 1504(1). UDO § 1504(4) stated that

[t]he volume, intensity, or frequency of use of property where a nonconforming situation exists may be increased and the equipment or processes used at a location where a nonconforming situation exists may be changed if these or similar changes amount only to changes in the degree of activity rather than changes in kind and no violation of other paragraphs of this section occur.

UDO § 1505(1) encouraged owners to repair and maintain structures located on property where nonconforming situations existed. "[R]enovation, restoration or reconstruction" of structures was permissible to refurbish or replace what previously existed so long as Article 15 of the UDO was not violated. UDO § 1505(1). Additionally,

[f]or purposes of determining whether a right to continue a nonconforming situation is lost pursuant to this section, all of the buildings, activities, and operations maintained on a lot are generally to be considered as a whole. For example, the failure to rent one (1) apartment in a nonconforming apartment building for 270 days shall not result in a loss of the right to rent that apartment or space thereafter so long as the apartment building as a whole is continuously maintained. But if a nonconforming use is maintained in conjunction with a conforming use, discontinuance of a nonconforming use for the required period shall terminate the right to maintain it thereafter.

UDO § 1507(3).

In December 1995, Dutch Key hired an engineer to design, upgrade, and apply for permits for a wastewater treatment system that would comply with DEM regulations to serve all 440 rental spaces at Orchard Park. When the County learned of Dutch Key's actions, its Board of Commissioners amended UDO § 1504(9) by adding a new paragraph, which stated:

Improvements to water and sewage treatment systems in order to accommodate more mobile homes in a mobile home park shall be

considered an enlargement of a nonconforming situation and shall not be permitted. However, improvements to a water and sewage treatment system serving a mobile home park for the purpose of improving public health that will not result in an increase in the number of mobile homes within the park shall be permitted. (Amended 8/19/96)

UDO § 1504(9) (hereinafter the Amendment). The Amendment was finalized on 19 October 1996.

On 17 October 1996, Dutch Key filed a complaint challenging the validity of the Amendment and sought a judgment declaring the Amendment void, as well as a permanent injunction to enjoin the County from enforcing the Amendment against it. Dutch Key believed it could continue operating Orchard Park at its original capacity of 440 mobile homes because "the use of plaintiff's property as a mobile home park has not been discontinued for a consecutive period of 270 days at any point in time since Orchard Park first opened."

The County filed its answer on 2 August 2000. The delay in answering was caused by questions regarding whether Dutch Key's original counsel could represent it in this action. On 29 January 2001, the parties consented to substitution of counsel. On 20 February 2001, Dutch Key moved to substitute real parties in interest because "[t]he affected property has been sold by . . . Dutch Key Corporation, and its successors in interest and current owners are Carolina Village, L.L.C., a Michigan limited liability corporation, and Huntington Properties, L.L.C., a Michigan limited liability corporation." On 13 March 2001, the trial court allowed the motion. The case was heard at the 5 March 2001 Civil Session of Currituck County Superior Court on defendants' N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2001) motion to dismiss. On 15 March 2001, the trial court entered an order granting the County's motion to dismiss the action. Plaintiffs appealed.

On appeal, plaintiffs argue the trial court erred in granting the County's motion to dismiss because (I) UDO §§ 1507(3) and 1504(9) do not prohibit them from upgrading the wastewater treatment system to serve existing but unoccupied spaces at Orchard Park; (II) UDO Article 15 was improperly construed to impair plaintiffs' vested rights; (III) the General Assembly granted exclusive authority to the Department of Environment and Natural Resources to regulate wastewater treatment systems; and (IV) plaintiffs' constitutional rights to due process and equal protection under the state and federal

**HUNTINGTON PROPS., LLC v. CURRITUCK CTY.**

[153 N.C. App. 218 (2002)]

constitutions were violated. For the reasons set forth herein, we disagree with plaintiffs' arguments and affirm the action of the trial court.

"A motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) tests the legal sufficiency of the complaint, which will be dismissed if it is completely without merit." *Town of Beech Mountain v. County of Watauga*, 91 N.C. App. 87, 89, 370 S.E.2d 453, 454-55 (1988), *aff'd*, 324 N.C. 409, 378 S.E.2d 780, *cert. denied*, 493 U.S. 954, 107 L. Ed. 2d 351 (1989) (citations omitted). The main inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

When evaluating zoning ordinances, the following rules apply: "It is well established that a duly adopted zoning ordinance is presumed to be valid and the burden is on the complaining party to show it to be invalid." *Williams v. Town of Spencer*, 129 N.C. App. 828, 830-31, 500 S.E.2d 473, 475 (1998). This is a heavy burden. *Id.* Prohibition of the expansion of a nonconforming use is lawful and consistent with good zoning practices. A county has legitimate power to regulate the extent to which nonconforming uses can be extended, expanded and enlarged. *See* N.C. Gen. Stat. § 153A-340 (2001); and *Williams*, 129 N.C. App. 828, 500 S.E.2d 473. This Court has consistently held that nonconforming uses are common; however, "[a]ny expansion of a nonconforming use is . . . subject to regulation." *Pamlico Marine Co., Inc. v. N.C. Dept. of Natural Resources*, 80 N.C. App. 201, 203-04, 341 S.E.2d 108, 111 (1986). "Zoning ordinances are construed against indefinite continuation of a nonconforming use. Ordinances in general are construed to give effect to all of their parts if possible." *Forsyth Co. v. Shelton*, 74 N.C. App. 674, 676, 329 S.E.2d 730, 733, *appeal dismissed, disc. review denied*, 314 N.C. 328, 333 S.E.2d 484 (1985) (citations omitted). Moreover,

> [n]on-conforming uses are not favored by the law. Most zoning schemes foresee elimination of non-conforming uses either by amortization, or attrition or other means. In accordance with this policy, zoning ordinances are strictly construed against indefinite continuation of non-conforming uses.

*CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 39, 411 S.E.2d 655, 659-60 (1992) (quoting *Appalachian Poster*

*Advertising Co. v. Board of Adjustment,* 52 N.C. App. 266, 274, 278 S.E.2d 321, 326 (1981) (citations omitted)). With these principles in mind, we turn to the arguments presented by the parties.

### Right to Lease Existing but Unoccupied Rental Spaces

**[1]** By their first assignment of error, plaintiffs contend the trial court erred in interpreting UDO §§ 1507(3) and 1504(9) to prevent them from upgrading their wastewater treatment system to serve existing but unoccupied rental spaces at Orchard Park. Plaintiffs argue the trial court's interpretation of UDO Article 15 was erroneous as a matter of law because it failed to read and harmonize the statute as a whole, failed to apply the directly applicable statutory provision and applied an incorrect provision instead, and failed to give the benefit of the doubt to plaintiffs. We do not agree.

"Statutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each." *Bd. of Adjmt. of the Town of Swansboro v. Town of Swansboro,* 334 N.C. 421, 427, 432 S.E.2d 310, 313, *reh'g denied,* 335 N.C. 182, 436 S.E.2d 369 (1993). " '[T]he various provisions of an act should be read so that all may, if possible, have their due and conjoint effect without repugnancy or inconsistency, so as to render the statute a consistent and harmonious whole.' " *Walker v. Bakeries Co.,* 234 N.C. 440, 442, 67 S.E.2d 459, 461 (1951) (quoting 50 Am. Jur. *Statutes* § 363). Portions of the same statute dealing with the same subject matter are " 'to be considered and interpreted as a whole, and in such case it is the accepted principle of statutory construction that every part of the law shall be given effect if this can be done by any fair and reasonable intendment . . . .' " *In re Hickerson,* 235 N.C. 716, 721, 71 S.E.2d 129, 132 (1952).

Article 15 of the County's UDO prevented landowners engaged in a nonconforming use from enlarging or extending the nonconforming use (UDO § 1504), wholly replacing the structure or facility that constituted the nonconforming use (UDO § 1505(1)(c)), changing the use of property to a different nonconforming use (UDO § 1506), and restarting a nonconforming use after it has been discontinued for 270 consecutive days (UDO § 1507). Nonetheless, plaintiffs maintain Article 15, § 1502 of the UDO expressly allows legal, nonconforming uses to continue and be replenished to their original use or occupancy:

> 1. Unless otherwise specifically provided in these regulations and subject to the restrictions and set forth in Article 15, non-

conforming situations that were otherwise lawful on the effective date of this Ordinance may be continued.

2. Nonconforming projects may be completed only in accordance with the provisions of Article 15.

To reach this result, plaintiffs argue Orchard Park should be examined as a whole—a mobile home park with 440 rentable spaces. Furthermore, because some spaces were continuously rented, the park's operations never fully ceased for any period of time, much less the 270 consecutive days mentioned in UDO § 1507(1). Plaintiffs refer to UDO § 1507's apartment example to argue that full occupancy is not the test to determine when a use has been discontinued. Lastly, plaintiffs note that when "the zoning and subdivision regulations are in derogation of private property, such provisions should be liberally construed in favor of the owner." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 111, 388 S.E.2d 538, 543 (1990). Plaintiffs believe there is ambiguity in the wording and placement of UDO § 1504(9), such that the trial court erred in resolving the ambiguity against them.

We agree with the County that the UDO, both before and after passage of the Amendment, prohibited expansion of plaintiffs' nonconforming use. As of both 1992 (when the mobile home park became a nonconforming use) and 1995 (when Dutch Key purchased Orchard Park at a foreclosure sale), neither Dutch Key nor plaintiffs could have rented the additional existing spaces (beyond the 140 mobile homes that could be serviced under the 29,000 gallon per day water limits) because neither Dutch Key nor plaintiffs had a state permit to sell those additional spaces. *See* UDO § 1502(1). At the time Orchard Park became a nonconforming use, it was only permitted to rent a total of 140 spaces—not 440—because of the water limits. Therefore, any number of spaces greater than 140 was never a part of the nonconforming situation and was incapable of falling under UDO § 1507's provision for "Abandonment and Discontinuation of Nonconforming Situations." Accordingly, plaintiffs' first assignment of error is overruled.

### Vested Rights

[2] By their second assignment of error, plaintiffs contend the trial court erroneously interpreted UDO Article 15 in a way that impaired plaintiffs' vested rights. We disagree.

"The 'vested rights' doctrine has evolved as a constitutional limitation on the state's exercise of its police power to restrict an individual's use of private property by the enactment of zoning ordinances." *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 62, 344 S.E.2d 272, 279 (1986); *Town of Hillsborough v. Smith*, 276 N.C. 48, 55, 170 S.E.2d 904, 909 (1969). "[A] determination of the 'vested rights' issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures." *Godfrey*, 317 N.C. at 63, 344 S.E.2d at 279.

Plaintiffs argue that, because their case was dismissed before discovery could begin, they were unable to ascertain the nature of the permits (site plan approval, building permits, electrical permits, Health Department permits, and so forth) they needed to obtain. They assert the only available method for establishing the strength of their claim is discovery. If the case were allowed to proceed, plaintiffs believe the permits would show that Orchard Park (at its full capacity of 440 spaces) was approved and permitted by the County, and that they built Orchard Park in good faith reliance on those permits. Thus, plaintiffs maintain they have a vested right to repopulate the entire mobile home park, up to the original capacity of 440 units.

Defendants argue plaintiffs' vested rights claim fails because plaintiffs cannot show they had either the County's permission or a valid permit authorizing them to expand Orchard Park to 440 units before the Amendment was enacted in 1996. Defendants also maintain plaintiffs cannot prove they made substantial expenditures in reliance on a permit or permission from the County. After reviewing the history of this case, we agree with defendants that plaintiffs cannot carry their burden.

Plaintiffs could have established vested rights in Orchard Park by (1) obtaining zoning and building permits from the State which would have allowed them the right to expand Orchard Park, or (2) obtaining a final interpretation of the UDO from the County's Planning Staff stating that they were allowed to operate Orchard Park at a capacity over 140 units. Upon examination of the record, however, it is clear that plaintiffs neither applied for nor obtained state permits to operate Orchard Park at a capacity over 140 units at the time the Amendment was passed in 1996. Consequently, plaintiffs failed to show their "obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required[.]" *Browning-Ferris Industries v. Guilford County Bd. of Adj.*, 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997).

The record also indicates that plaintiffs never obtained a final interpretation of the UDO from the County's Planning Staff. In fact, it would have been impossible for plaintiffs to have obtained permission to expand Orchard Park because a 440-unit mobile home park was not otherwise lawful at the time Orchard Park became nonconforming in 1992, much less when the Amendment was passed in 1996.

We also note that plaintiffs failed to follow the proper avenue for appealing their situation. Article 21 of Currituck County's UDO gives the County Planning Staff jurisdiction to make initial interpretations of its provisions. *See* UDO § 1913. Appeal is then to the Board of Adjustment and then to the superior court under a writ of certiorari. *See* UDO Article 21. Direct civil action, as plaintiffs have used here, has not been allowed to proceed or successfully challenge a nonconforming use. *See Fantasy World, Inc. v. Greensboro Bd. of Adjustment,* 128 N.C. App. 703, 496 S.E.2d 825, *appeal dismissed, disc. review denied,* 348 N.C. 496, 510 S.E.2d 382 (1998) (demonstrating the proper method for challenging nonconforming use issues).

Moreover, we agree with defendants that plaintiffs' proposed upgrade in Orchard Park's wastewater treatment system was an increase in the *extent* of the nonconforming use. Defendants' attempts to prevent this expansion is in harmony with the State's policy of construing ordinances against the expansion of a nonconforming use. *See In re O'Neal,* 243 N.C. 714, 92 S.E.2d 189 (1956); *In re Appeal of Hasting,* 252 N.C. 327, 113 S.E.2d 433 (1960); and *Kirkpatrick v. Village Council,* 138 N.C. App. 79, 530 S.E.2d 338 (2000).

We believe plaintiffs' arguments are without merit for a number of other reasons. First, plaintiffs' brief asserts that "[o]nly during discovery can Huntington establish the strength of its claim." Plaintiffs evidently argue that whenever a Rule 12(b)(6) motion is pending, the case should not be dismissed so long as the plaintiff may gather information to support its position. However, fishing expeditions of this sort are not contemplated by Rule 12(b)(6), which allows dismissals based upon the pleadings. Second, plaintiffs stated that the contents of the permits were "not known." It follows, then, that plaintiffs could never have relied upon them in good faith. Lastly, we note that permits (such as those sought by plaintiffs) are issued by the State and are easily obtainable public records. We do not believe plaintiffs could only learn of the existence and details of such permits through

legal discovery procedures. We therefore conclude that the trial court properly dismissed plaintiffs' vested rights claim, and this assignment of error is overruled.

## Preemption

[3] By their third assignment of error, plaintiffs contend the trial court erred in granting defendants' motion to dismiss and in ruling the General Assembly did not grant exclusive authority in the Department of Environment and Natural Resources (DENR) to regulate wastewater treatment systems. Plaintiffs believe the power to regulate wastewater treatment systems lies exclusively with the DENR, so that the County was not within its rights by trying to prevent plaintiffs from updating their system. In support of their contention, plaintiffs point to the detail and volume of the North Carolina Administrative Code's references on the subject of wastewater treatment systems.

After reviewing the County's Amendment, we believe it is most accurately described as a zoning ordinance that clarifies what constitutes the impermissible expansion of a nonconforming use. It is not, as plaintiffs argue, an attempt by the County to control wastewater treatment systems. Our conclusion is bolstered by the fact that the Amendment is found in the section of the UDO detailing enlargements of nonconforming uses. By its own terms, the Amendment states "[i]mprovements to water and sewage treatment systems *in order to accommodate more mobile homes in a mobile home park . . .* shall not be permitted." *See* UDO § 1504(9) (emphasis added). The Amendment limits improvements to wastewater treatment systems when those improvements are designed to increase capacity and allow the expansion of a nonconforming use. This is explained in the second sentence of UDO § 1504(9), which states: "However, improvements to a water and sewage treatment system serving a mobile home park for the purpose of improving public health that will not result in an increase in the number of mobile homes within the park shall be permitted."

N.C. Gen. Stat. § 153A-4 (2001) states:

It is the policy of the General Assembly that the counties of this State should have adequate authority to exercise the powers, rights, duties, functions, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of local acts shall be broadly construed and grants of power shall

be construed to include any powers that are reasonably expedient to the exercise of that power.

Keeping in mind that counties are authorized to zone property and to regulate and prohibit the expansion of nonconforming uses, *see* N.C. Gen. Stat. § 153A-340, and *Williams*, 129 N.C. App. 828, 500 S.E.2d 473, we believe the County's Amendment was (1) a proper exercise of its powers to control land use within the territorial jurisdiction of the County, and (2) controls within Currituck County's territorial jurisdiction. We therefore perceive no discord between state regulations regarding wastewater treatment systems and the County's Amendment. Accordingly, plaintiffs' third assignment of error is overruled.

## Constitutional Considerations

[4] In their final assignment of error, plaintiffs contend the trial court's dismissal of their case violated their federal and state constitutional rights to due process and equal protection. More specifically, plaintiffs argue that if they prevail on the vested rights issue, they have necessarily established a violation of their constitutional rights because " '[a] lawfully established nonconforming use is a vested right and is entitled to constitutional protection.' " *Godfrey*, 317 N.C. at 62, 344 S.E.2d at 279 (quoting 4 E. Yokley, Zoning Law and Practice § 22-3 (4th ed. 1979)). Plaintiffs also charge the County with knowledge of Dutch Key's (and later their) intent to restore Orchard Park to a 440-unit operational mobile home park by upgrading the wastewater treatment system. Plaintiffs believe the County's 1996 Amendment to the UDO was enacted simply to frustrate those plans, and for no other legitimate policy reasons. Plaintiffs contend such behavior violated Dutch Key's substantive and procedural due process rights and singled Dutch Key out for unequal treatment (in turn affecting them, as they were Dutch Keys' successors in interest).

"Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *State v. Joyner*, 286 N.C. 366, 371, 211 S.E.2d 320, 323, *appeal dismissed*, 422 U.S. 1002, 45 L. Ed. 2d 666 (1975). However, "[u]nless legislation involves a suspect classification or impinges upon fundamental personal rights, it is presumed constitutional and need only be rationally related to a legitimate state interest." *Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345, 351, 350 S.E.2d 365, 369 (1986), *aff'd*, 320 N.C. 776, 360 S.E.2d 783

(1987). If no suspect classification or fundamental personal right is involved, the mere rationality standard applies and the law in question will be upheld if it has "any conceivable rational basis." *Id.* Our state constitution's standard for due process analysis has been described as follows: "[T]he law must have a rational, real and substantial relation to a valid governmental objective (i.e., the protection of the public health, morals, order, safety, or general welfare)." *Id.* at 352, 350 S.E.2d at 369-70.

Our Courts have held that it is a legitimate interest, as a matter of law, to legislate against the expansion or continuation of nonconforming uses. *See Williams*, 129 N.C. App. at 831, 500 S.E.2d at 475. *See also Grace Baptist Church v. City of Oxford*, 320 N.C. 439, 358 S.E.2d 372 (1987); and *Joyner*, 286 N.C. 366, 211 S.E.2d 320. In *Joyner*, the Supreme Court held that

> [i]n examining the reasonableness of an ordinance, due process dictates that the court look at the entire ordinance and not only at the provision as it applies to a particular inhabitant of the municipality. The fact that one citizen is adversely affected by a zoning ordinance does not invalidate the ordinance.

*Id.* at 371, 211 S.E.2d at 323 (citations omitted). Preventing the growth of nonconforming uses "represents a conscious effort on the part of the legislative body . . . to regulate the use of land . . . and thus promote the health, safety, or general welfare of the community." *Id.* at 372, 211 S.E.2d at 324. Based on the foregoing, we believe plaintiffs have failed to demonstrate a violation of their due process rights.

Plaintiffs have likewise failed to show their equal protection rights were violated. We first note that our state standard is the same as the federal standard. *See State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 680-81, 446 S.E.2d 332, 346 (1994).

> When a governmental classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the lower tier of equal protection analysis requiring that the classification be made upon a rational basis must be applied. The "rational basis" standard merely requires that the governmental classification bear some rational relationship to a conceivable legitimate interest of government. Additionally, in instances in which it is appropriate to apply the rational basis standard, the governmental act is entitled to a presumption of validity.

*White v. Pate*, 308 N.C. 759, 766-67, 304 S.E.2d 199, 204 (1983) (citations omitted). Classifications are presumed valid; "under the lower tier, rational basis test, the party challenging the legislation has a tremendous burden in showing that the questioned legislation is unconstitutional." *In re Appeals of Timber Companies*, 98 N.C. App. 412, 420, 391 S.E.2d 503, 507-08 (1990). Moreover, "[t]he deference afforded to the government under the rational basis test is so deferential that even if the government's actual purpose in creating classifications is not rational, a court can uphold the regulation if the court can *envision* some rational basis for the classification." *Guerra v. Scruggs*, 942 F.2d 270, 279 (4th Cir. 1991) (emphasis in original). After careful review of plaintiffs' contentions, we believe they have failed to successfully demonstrate that the County violated their equal protection rights. Accordingly, plaintiffs' final assignment of error is overruled.

After thoughtful consideration of both the underlying proceedings and the arguments presented by the parties, we conclude the trial court properly dismissed plaintiffs' complaint. The trial court's order granting defendants' motion to dismiss plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) is hereby

Affirmed.

Judges WYNN and BIGGS concur.